CHASE and another, Respondents, vs. THE CITY OF OSHKOSH, Appellant.

*February 2 — February 23, 1892.*

*Municipal corporations: Summary removal of shade trees standing within limits of sidewalk.*

1. The charter of the city of Oshkosh gives the common council power, by ordinance, resolution, or by-law, when it deems it expedient, "to control and regulate the streets . . . and to remove and abate any obstructions and encroachments therein," and to "cause the removal of all obstructions in and upon all streets in said city." *Held*, that the council may cause to be summarily cut down and removed shade trees standing within the limits of a sidewalk and belonging to the abutting lot-owner.

2. Whether such trees are obstructions to travel and ought to be removed is a matter to be determined by the council in its discretion, and except in case of an abuse of such discretion the courts will not interfere.

3. Shade trees standing within the limits of a sidewalk are not an encroachment upon the street, but an obstruction, and their removal by the proper authorities need not be preceded by a hearing on notice.

4. It is not necessary, in order that such trees should constitute an obstruction, so as to authorize their removal, that they should interrupt or stop travel.

APPEAL from the Circuit Court for *Winnebago* County.

This action was brought by the plaintiffs against the city for the alleged wrongful cutting down and removing of five ornamental shade trees which were standing and growing upon their premises, on the west side of Oregon street in said city, inside of the street line of the sidewalk and next to the carriage-way. It is charged that the trees did not incumber or obstruct the street or sidewalk, or hinder or delay travel thereon; that the common council of the city, at a regular meeting, adopted a resolution directing and empowering the aldermen of the ward in which said premises were situated to cut down and remove the trees,

and that they, acting upon said directions, unlawfully cut down and destroyed them. And it was claimed that no previous notice had been given to the plaintiffs to remove them; that the resolution of the common council was null and void, and said trees were cut down and carried away without due process of law. The answer was a general denial.

The proof showed that the trees in question had been growing in front of the plaintiff's premises for about sixteen years, were twenty-five to forty feet high, and about twelve inches in diameter, and stood within the sidewalk from eight to fifteen inches, as some witnesses said, and, as others stated, just inside of the walk. It was shown that the plaintiffs had been notified by a policeman to cut these trees down, but this was before the passage of the resolution authorizing their removal. Considerable testimony was given to show that the trees were not an obstruction to travel on the street or walk, and caused no inconvenience; and, on the other hand, testimony was given to show that travelers could not walk on the entire width of the sidewalk without running into or against the trees. The aldermen of the ward all testified that they considered that the interests of the city required their removal, that frequent complaints had been made to them about the trees for two years past, and that they caused the trees to be cut down and removed under the resolution in question.

The complaint showed upon its face under and by what authority the trees had been so cut down and removed, and at the trial the defendant objected to the introduction of any evidence under it, for the reason that it did not state a cause of action; but this objection was overruled. Various objections were taken to testimony offered, on either hand, to show that the trees were or were not an obstruction to travel on the sidewalk or street.

The court was asked by the defendant to instruct the

jury that "it is the duty of the city to keep its streets and sidewalks at all times open and free for the use of persons traveling over and along the same, over the entire width of the street, and failure so to keep the streets and sidewalks free from obstruction would render the city liable for injury occasioned thereby;" also, that it was "made the duty of the aldermen, and they had the power and right, without notice, to remove any obstruction from the streets and sidewalks;" also, that there was nothing in the charter requiring previous notice, either verbal or written, to be given in case of the removal of an obstruction from the streets or sidewalks. These several instructions were refused.

The court submitted to the jury the questions: *First.* "Did said trees incommode or hinder the public use and enjoyment of said street or sidewalk?" *Second.* "Did said trees injure said street or sidewalk, or interfere with travel?" And the court charged the jury that in answering the first question they "must consider only the ordinary and reasonable use and enjoyment of the street by the public, and must exclude any incidental inconvenience necessarily accompanying the keeping of shade trees; and, if the jury find that the shade trees only put the public to those inconveniences necessarily accompanying shade trees, and did not deprive it of any substantial or necessary use or enjoyment of the street or sidewalk, then the jury must answer the first question in the negative."

The jury answered both said questions in the negative, and assessed the plaintiff's damages at $1,100. The defendant moved for judgment on the verdict, which was denied; and moved also to set it aside and for a new trial, on the ground that it was contrary to the evidence and contrary to law, and for error of the court in the charge to the jury, and for refusal to sustain the objection to any evidence under the complaint. This motion was denied. The court

ordered the plaintiffs to remit $300 of the damages, and gave judgment in their favor for $800 damages and costs, and the defendant appealed.

*H. I. Weed*, for the appellant.

For the respondents there was a brief by *Finch & Barber*, and oral argument by *Henry Barber* and *F. Beglinger*.

PINNEY, J. In the case of *Kimball v. Kenosha*, 4 Wis. 321, it is decided that the grantee of a lot bounded by a street or streets in a village platted and laid out in conformity with the statute, takes to the center of the street on which the lot abuts, subject to the public easement; and this proposition has been repeatedly affirmed in numerous subsequent cases, some of which are cited in *Andrews v. Youmans*, 78 Wis. 58. The right of the public to use the street for purposes of travel extends to the portion set apart or used for sidewalks, as well as to the way for carriages, wagons, etc., and, in short, to the entire width of the street upon which the land of the lot-owner abuts. As against the lot-owner, the city, as trustee of the public use, has an undoubted right, whenever its authorities see fit, to open and fit for use and travel the street over which the public easement extends, to its entire width; and whether it will so open and improve it, or whether it should be so opened or improved, is a matter of discretion, to be determined by the public authorities to whom the charge and control of the public interests in and over such easements is committed. With this discretion of the authorities courts cannot ordinarily interfere upon the complaint of a lot-owner, so long as the easement continues to exist; and no mere *non-user*, however long continued, will operate as an abandonment of the public right, even though, until needed for a public use, the authorities should treat the street as the property of the owner of the lot. The public authorities, representing its interests, will not be thereby

estopped from removing obstructions therefrom and opening and fitting it for public use to its entire width. *State v. Leaver*, 62 Wis. 387; *Reilly v. Racine*, 51 Wis. 526; *Childs v. Nelson*, 69 Wis. 125. The public use is the dominant interest, and the public authorities are the exclusive judges when and to what extent the street shall be improved. Courts can interfere only in cases of fraud or oppression, constituting manifest abuse of discretion. *Benson v. Waukesha*, 74 Wis. 31–39; *Wright v. Forrestal*, 65 Wis. 341; *Pontiac v. Carter*, 32 Mich. 164; *Brush v. Carbondale*, 78 Ill. 74.

It necessarily follows that for the performance of this discretionary duty by the city officers in a reasonable and prudent manner no action can be maintained against the city. *Alexander v. Milwaukee*, 16 Wis. 264. It may well be that had the trees in question been cut down or removed by some third party, not acting under proper authority from the city, he would have been held liable to the plaintiffs in an action for trespass; and it was so held in *Andrews v. Youmans*, 78 Wis. 58. But this does not tend to show that this action can be maintained for cutting and removing them under the authority of the common council given by resolution to the aldermen of the ward, standing, as they did, within the sidewalk, even without notice to the lot-owner. There was testimony that plaintiffs had been notified to remove the trees, and they had failed to do so. Complaint had been made for two years previously, to the aldermen of that ward, that the trees were obstructions to the sidewalk; and it is not contended but that they were cut down in good faith and in pursuance of the authority which the city possesses over its streets and sidewalks. It was admitted at the trial that the trees were cut down by parties acting in good faith under the authority of the city and without malice.

It was the duty of the city to keep its streets and side-

walks free and clear of obstructions for the use of persons traveling over and along the same; and there can be no doubt but that the city would have been liable in damages to any person traveling along and over the walk in question, in the night-time, who, without fault on his part, had been injured by running against these trees situated within the limits of the walk. There can be no doubt but that the common council had the right, therefore, to treat them as obstructions to the public travel, and a nuisance, and to abate the nuisance in the manner they did, to protect the public in the lawful use of the sidewalk, and the city from liability for injuries which might be sustained by persons passing along and over it and who might be injured by such obstructions. Whether the trees were obstructions to travel and ought to be removed in order to make the sidewalk reasonably safe for travel, was, we think, a matter within the *quasi* legislative discretion conferred on the common council by the city charter. The charter of the city gives the common council, under various subdivisions of sec. 3, subch. VI, ch. 183, Laws of 1883, power, *by ordinance, resolution, or by-law, when it deems it expedient*, "to prevent the incumbering of the streets and sidewalks," and to " control and regulate the streets, . . . and to remove and abate any obstructions and encroachments therein," and to " protect the same from any encroachment or injury," and " to prevent, prohibit, and cause the removal of all obstructions in and upon all streets in said city; " and the provisions of ch. 52, R. S., on the subject of encroachments and obstructions on streets and highways, are not applicable, because special provisions are made in the charter of the city of *Oshkosh*, inconsistent therewith (R. S. sec. 1347); and by the charter of the city it is provided that " no general law of this state, contravening the provisions of the charter, shall be considered as repealing, annulling, or modifying the same, unless such purpose be

expressly set forth in such law as an amendment of this charter" (Laws of 1883, ch. 183, subch. XIV, sec. 25); and this provision was in force when the present revision of the statutes was adopted (Laws of 1877, ch. 123, subch. XIII, sec. 25). Similar provisions have existed in the various charters of cities in this state from an early day.

Inasmuch as the discretion and judgment of the common council in respect to these matters cannot be revised by the court or jury, there being no evidence tending to show an abuse of it, the court ought not to have submitted it to the jury to find whether: " (1) Did said trees incommode or hinder the public use and enjoyment of said street or sidewalk? (2) Did said trees injure said street or sidewalk, or interfere with travel? " It was not seriously contended on the part of the plaintiffs but that the city authorities might authorize the removal of the trees; but it was claimed that they constituted an encroachment, and were not obstructions to the walk or street, and that they could not be removed without a hearing on notice. An encroachment is a gradual entering on and taking possession by one of what is not his own; the unlawful gaining upon the rights or possessions of another. The fencing in or inclosing of a portion of a street or highway by a fence or wall, or the occupancy of it, would be an encroachment; and, as there may be uncertainty as to the exact line of the street or highway, it may be necessary, in order to remove it, that notice be given, so that the question of encroachment may be first passed upon by a jury. An obstruction is a blocking up; filling with obstacles or impediments; an impeding, embarrassing, or opposing the passage along and over the street,— and, to constitute it such, it need not be such as to stop travel. The provisions in the city charter on the subject of encroachments and obstructions of streets and sidewalks give very extensive and comprehensive powers to the common council, of a *quasi* legislative character,

but without any particular directions as to the manner of their exercise; and these powers are peculiarly adapted to the needs of a growing and populous village or city. They are not only very comprehensive and far-reaching, but they clearly extend to the cutting down and removal of the trees in the manner adopted in the present instance, as they were manifestly obstructions to the sidewalk, although room was left on the walk for foot travel to pass. It was not necessary, in order that they should constitute an obstruction, so as to authorize their removal, that they should interrupt or stop travel. The case of *State v. Leaver*, 62 Wis. 392, is decisive on this subject. It surely cannot be maintained that the plaintiffs have the right to plant and maintain other trees in their place within the sidewalk, or that other lot-owners can plant in like manner and maintain trees thus situated.

As already stated, the plaintiffs had a right of property in the trees, in the sense that they might have cut or removed them, or maintained an action against any one who did so, not acting under authority of the common council; but it does not follow that they had the right to keep and maintain them standing within the sidewalk, in defiance of the resolution of the common council insisting, in the interests of the public, on their removal. The case of *Pauer v. Albrecht*, 72 Wis. 416, is clearly not in point; for it was a case of an encroachment; and the charter did not contain provisions authorizing the removal of encroachments, and the proceedings had to be, if at all, under the general statute. A permanent obstruction, such as trees standing within a sidewalk or traveled street, or stone columns which may interfere with public travel, constitutes *per se* a public nuisance, and may be summarily removed by direction of the common council.

The circuit court, upon the entire case, ought to have directed a verdict for the defendant. For these reasons, and

for error in refusing the instructions asked by the defendant, the judgment of the circuit court must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

See note to this case in 15 L. R. A. 553.— REP.