[No. 14358. Department One. December 5, 1917.]

HENRY SCHALLER *et al.*, *Appellants*, v. THE CITY OF TACOMA *et al.*, *Respondents.*[1]

MUNICIPAL CORPORATIONS—STREETS—CONTROL — SHADE TREES. A city is not liable for damages for cutting down shade trees in a street the roots of which grew into and clogged a city sewer.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered June 4, 1917, upon findings in favor of the defendants, dismissing an action for trespass. Affirmed.

*T. W. Hammond*, for appellants.

*U. E. Harmon* and *Frank M. Carnahan*, for respondents.

WEBSTER, J.—This is an action brought by appellants against the city of Tacoma and Charles D. Atkins, its commissioner of public works, for treble damages under Rem. Code, § 939, for the removal of two poplar trees which stood in North Gove street in front of appellants' property. From a judgment dismissing the action, this appeal is taken.

The trees in question were located probably ten feet from the front line of appellants' property. Between the trees

[1]Reported in 168 Pac. 1136.

and the property line, a cement sidewalk had been constructed by the city. On the farther side of the trees, and approximately twelve or fifteen feet away, there was located a sanitary sewer which had been constructed and was being maintained by the city. The sewer was of standard construction and about seven or eight feet beneath the surface of the ground. During the year 1913, the sewer became clogged in front of appellants' property, the obstruction being so complete that the city employees were unable to open the sewer in the ordinary way, but were compelled to excavate and take up sections of the pipe. When this was done it was discovered that roots from the trees had grown into the sewer and completely obstructed it. In January, 1917, the sewer again became clogged with roots from the trees. Immediately thereafter the trees were cut down under an order of the commissioner of public works.

The city charter of Tacoma provides:

"The commissioner of public works shall have . . . control of all streets . . . and of the improvement and repair thereof . . . of all sewers, drains and cesspools, and all work pertaining thereto, . . . the making of public improvements for the city . . . and of the repair of such improvements. He shall have exclusive authority to prescribe rules . . . for . . . the use of the streets or any portion thereof . . . or for any other purpose such as ordinarily and properly belongs to the public from the dedication thereof to public use. He shall have full power to regulate and control . . . the manner of using the streets . . . and to prevent and remove obstructions therefrom." Tacoma Charter, § 86.

The sole question in the case is whether the city is liable in damages for removing the trees. The proposition is answered in the negative by this court in *Robinson v. Spokane*, 66 Wash. 527, 120 Pac. 101, Ann. Cas. 1913C 1012. While the facts of that case differ somewhat from those here presented, the same principle applies. In *Rosenthal v. Goldsboro*,

149 N. C. 128, 62 S. E. 905, 20 L. R. A. (N. S.) 809, re-
ferred to in the opinion, it is said:

"True, the doctrine announced in *Tate v. Greensboro, su-
pra* [114 N. C. 392, 19 S. E. 767], was in reference to the
removal of shade trees when considered as an obstruction to
travel, but the dominant principle discussed and applied was
in reference to the general power of a municipal government
over its streets when exercised for the benefit and convenience
of the public; and this principle is none the less potent, and
its application none the less necessary, because the motive and
purpose of exercising the power was for the preservation of
the city sewerage. It is well established that the right of
user for the last purpose arises to the public by reason of the
dedication (Elliott on Streets, sec. 17.), and, in a matter of
such supreme and controlling importance, it would lead to
most deplorable results if municipal governments could be
stopped or hindered in their efforts, taken in good faith, to
preserve the public health, unless their action should come
clearly under condemnation within the principle announced
as law in that decision. Nor could any valid objection be
made because no notice was given plaintiff. . . . In the
present case, as we have endeavored to show, the authorities
of the city being in the exercise of discretionary powers, con-
ferred upon them by the law for the welfare of the public, and
there being no evidence tending to show a want of good faith
or oppressive abuse of their discretion, there is no legal right
of plaintiff infringed upon. The injury, if any suffered by
her, is *damnum absque injuria.*"

See, also, *Chase v. Oshkosh,* 81 Wis. 313, 51 N. W. 560,
29 Am. St. 898, 15 L. R. A. 553.

The judgment is affirmed.

ELLIS, C. J., PARKER, MAIN, and FULLERTON, JJ., concur.